UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------x

In Re: New York City Policing During Summer 2020             No. 20 Civ. 8924
Demonstrations.


This filing relates to: *all cases*


--------------------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINTS**

GEORGIA M. PESTANA
ACTING CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    Brachah Goykadosh
       Elissa B. Jacobs
       Dara L. Weiss
       *Senior Counsels*
       Special Federal Litigation Division
       (212) 356-3523

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 1

   I.  Plaintiffs Fail to Establish Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) ............ 1

      A.  Plaintiffs Do Not Have Standing to Pursue Any Claim for Injunctive Relief. ....... 1

      B.  Plaintiffs Do Not Have Standing to Pursue Any Claim for Declaratory Relief. .... 4

      C.  Plaintiff State of New York Does Not Have Parens Patriae Standing ................... 4

      D.  Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot. ..................... 6

      E.  Defendants May Rely on Documents Outside the Pleadings. ............................... 7

   II.  Plaintiffs Fail to State a Claim for Relief Pursuant to Rule 12(b)(6) ............................... 9

      A.  Plaintiffs Fail to State a Claim for Municipal Liability. ........................................ 9

      B.  Plaintiffs' Claims against de Blasio, Shea, and Monahan are Redundant. ........... 16

      C.  Plaintiffs Fail to Plead Any Supervisory Liability Claim. .................................... 17

   III.  Qualified Immunity Shields Defendants from Liability. ................................................... 19

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfred L. Snapp & Son v. Puerto Rico,*
   458 U.S. 592 (1982)............................................................................................................6

*An v. City of New York,*
   No. 16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1,
   2017) ..................................................................................................................................3

*Apotex Inc. v. Acorda Therapeutics, Inc.,*
   823 F.3d 51 (2d Cir. 2016).................................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................................17, 18

*Burfeindt v. Postupack,*
   509 F. App'x 65 (2d Cir. 2013) .........................................................................................7

*Colon v. Coughlin,*
   58 F.3d 865 (2d Cir. 1995)...............................................................................................17

*Conn. Bar Ass'n v. United States,*
   620 F.3d 81 (2d Cir. 2010)................................................................................................1

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.,*
   790 F.3d 411 (2d Cir. 2015)..............................................................................................7

*DuBois v. City of White Plains,*
   No. 16 Civ. 7771 (NSR), 2021 U.S. Dist. LEXIS 62527 (S.D.N.Y. Mar. 30,
   2021) ................................................................................................................................18

*Falls v. Pitt,*
   No. 16 Civ. 8863 (KMK), 2021 U.S. Dist. LEXIS 58197 (S.D.N.Y. Mar. 26,
   2021) ................................................................................................................................18

*Floyd v. City of New York,*
   283 F.R.D. 153 (S.D.N.Y. 2012) .......................................................................................2

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
   528 U.S. 167 (2000)............................................................................................................6

*Gersbacher v. City of New York*,
No. 14 Civ. 7600 (GHW), 2017 U.S. Dist. LEXIS 162707 (S.D.N.Y. Oct. 2, 2017) ..............................................................................................................18

*Glascoe v. Solomon*,
No. 18 Civ. 8284 (AT), 2020 U.S. Dist. LEXIS 46930 (S.D.N.Y. Mar. 17, 2020) ................................................................................................................8

*Gonzalez v. New York City*,
No. 16 Civ. 00254 (CM), 2016 U.S. Dist. LEXIS 177820 (S.D.N.Y. Dec. 2, 2016) ..............................................................................................................10

*Herrera v. Shea*,
No. 20-CV-3665 (PKC), 2021 U.S. Dist. LEXIS 75937 (E.D.N.Y. Apr. 20, 2021) ...........................................................................................................16, 18

*Huelbig v. Aurora Loan Servs., LLC*,
No. 10 Civ. 6215 (RJH) (THK), 2011 U.S. Dist. LEXIS 107428 (S.D.N.Y. May 18, 2011) .....................................................................................................8

*J.T. v. de Blasio*,
No. 20 Civ. 5878 (CM), 2020 U.S. Dist. LEXIS 212663 (S.D.N.Y. Nov. 13, 2020) ................................................................................................................7

*Jenkins v. City of New York*,
478 F.3d 76 (2d Cir. 2007) ...........................................................................14

*Kamen v. American Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986) ........................................................................8

*Liberian Cmty. Ass'n of Conn. v. Lamont*,
970 F.3d 174 (2d Cir. 2020) .........................................................................20

*Libertarian Party v. Cuomo*,
970 F.3d 106 (2d Cir. 2020) ...........................................................................7

*Ligon v. City of New York*,
288 F.R.D. 72 (S.D.N.Y. 2013) ......................................................................2

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) .....................................................................................2, 4

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000) ...........................................................................7

*McLaughlin v. Chong*,
No. 13 Civ. 0807 (NSR), 2016 U.S. Dist. LEXIS 42614 (S.D.N.Y. Mar. 29, 2016) ................................................................................................................8

iv

*McMillian v. Monroe Cty.*,
520 U.S. 781 (1997)........................................................................................................16

*Mullenix v. Luna*,
577 U.S. 7 (2015)............................................................................................................19

*Nelson v. Wells Fargo Bank, N.A.*,
No. 17 Civ. 4045 (LAP), 2019 U.S. Dist. LEXIS 101779 (S.D.N.Y. June 18,
2019) ................................................................................................................................8

*New York v. Peter & John's Pump House*,
914 F. Supp. 809 (N.D.N.Y. 1996)..................................................................................6

*Niz-Chavez v. Garland*,
No. 19-863, 2021 U.S. LEXIS 2232 (Apr. 29, 2021) ....................................................12

*O'Shea v. Littleton*,
414 U.S. 488 (1974)..........................................................................................................2

*Pearson v. Callahan*,
555 U.S. 223 (2009)........................................................................................................19

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)........................................................................................................18

*Saba v. Cuomo*,
No. 20 Civ. 5859 (LJL), 2021 U.S. Dist. LEXIS 78475 (S.D.N.Y. Apr. 23,
2021) ................................................................................................................................7

*Saucier v. Katz*,
533 U.S. 194 (2001)........................................................................................................20

*Seabrook v. Janssen Pharm.*,
No. 20 Civ. 2005 (LTS), 2021 U.S. Dist. LEXIS 74880 (S.D.N.Y. Apr. 19,
2021) ..............................................................................................................................18

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004)..............................................................................................4

*Sierra v. United States*,
No. 97 Civ. 9329 (RWS), 1998 U.S. Dist. LEXIS 14135 (S.D.N.Y. Sep. 9,
1998) ..............................................................................................................4, 8, 13, 16

*Tangreti v. Bachmann*,
983 F.3d 609 (2d Cir. 2020)......................................................................................17, 18

*Tardif v. City of New York*,
991 F.3d 394 (2d Cir. 2021)..............................................................................................1

*Taylor v. City of New York*,
   16 Civ. 7857 (NRB), 2018 U.S. Dist. LEXIS 52308 (S.D.N.Y. Mar. 27, 2018).......................9

*Topps Co., Inc. v. Koko's Confectionery & Novelty*,
   No. 16 Civ. 5954 (GBD), 2020 U.S. Dist. LEXIS 155951 (S.D.N.Y. Aug. 27,
   2020) .............................................................................................................................................8

*Wagschal v. Skoufis*,
   442 F. Supp. 3d 612 (S.D.N.Y. 2020) *aff'd* No. 20-871, 2021 U.S. App.
   LEXIS 11870 (2d Cir. Apr. 22, 2021) ........................................................................................7

## PRELIMINARY STATEMENT[1]

One case. That is how many protest lawsuits resulted in a liability finding in the past decade in the Southern District of New York. One cent. That is how much a jury awarded following a protest trial. One summer. That is approximately how long the protests which are at the crux of this matter lasted.[2] These facts support why plaintiffs' claims for equitable relief and municipal liability should be dismissed. There is no history—or present or future—of unconstitutional policing. There is no frequent deprivation of constitutional rights. These claims cannot withstand Rule 12 scrutiny. The protests from last summer are over. The City has investigated its actions from the summer and is refining its policing at protests. The tenuous claims for municipal liability fail. Defendants' motion should be granted in its entirety.

## ARGUMENT[3]

I.  **Plaintiffs Fail to Establish Subject Matter Jurisdiction Pursuant to Rule 12(b)(1).**

  A.  ***Plaintiffs Do Not Have Standing to Pursue Any Claim for Injunctive Relief.***

  1.  *Plaintiffs Fail to Show a Likelihood of Future Harm.*

Plaintiffs fail to allege a likelihood of future harm that rises above conjectural or hypothetical. On opposition, plaintiffs do not show the "reality of the threat of repeated injury,"

---

[1] Defendants refer to the opposition filed by nearly all plaintiffs as "Pl. Opp. 1" and the opposition filed separately by *Sow* plaintiffs as "Pl. Opp. 2." *See* ECF Nos. 134, 137.

[2] Indeed, the caption is: "*In Re: New York City Policing During Summer 2020 Demonstrations*."

[3] Plaintiffs say that defendants' motion is a limited one. (Pl. Opp. 2 at 5-7.) This is true. Defendants did not move to dismiss all the claims in all six complaints. Nor could defendants do so at this early stage in good faith. Plaintiffs also argue that defendants have waived any arguments that they did not raise. (Pl. Opp. 1 at 24; Pl. Opp. 2 at 7.) This is not true. Defendants may raise any good faith argument on summary judgment. Defendants do not raise new arguments on reply. *See Tardif v. City of New York*, 991 F.3d 394, 404 n.7 (2d Cir. 2021) (quoting *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010)).

which is "relevant to the standing inquiry." *Los Angeles v. Lyons,* 461 U.S. 95, 107 n.8, (1983). Plaintiffs also fail to show any "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). While plaintiffs say that they intend to continue protesting, there is no plausible, non-conclusory allegation that a threat of injury exists. (Pl. Opp. 1 at 7.) The pandemic is (hopefully) nearing its end. There is no indication that there will be unplanned and unprecedented protests comparable to those last summer. In sum, there are no objective criteria to which plaintiffs can point.

Instead, plaintiffs focus on their "subjective apprehensions," which is not a sufficient basis for an injunction. *Id.* (Pl. Opp. 1 at 7; Pl. Opp. 2 at 8-10.) Plaintiffs attempt to lend credence to their hypothesized harm. They argue that the "possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." (Pl. Opp. 2 at 8.) Even if this assertion was supported by case law with precedential effect,[4] it has no bearing here.[5]  Though plaintiffs highlight one person who has been arrested twice during the summer's protests, there is no plausible allegation that this will happen again. (Pl. Opp. 2 at 9.) Unlike the cases that plaintiffs cite to—which are part of the stop-question-and-frisk lawsuits (*Floyd* and *Ligon*)— protests are not daily experience for the overwhelming majority of people. And regardless of this, according to the DOI Report, which has been incorporated by reference into the complaints,[6] "[c]onsidering their scale and duration, New York City's protests were largely

---

[4] It is not. Neither the Supreme Court nor the Second Circuit has ever adopted this statement as law. *Ligon v. City of New York*, 288 F.R.D. 72 (S.D.N.Y. 2013) and *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012), two opinions by the same District Judge, citing a Ninth Circuit opinion, are not binding on this Court.

[5] Furthermore, this sort of logic conflates both prongs required for injunctive relief: a likelihood of future harm and a widespread practice.

[6] Plaintiffs openly admit that the DOI Report is part of their complaints. (Pl. Opp. 2 at 7, n.5.)

peaceful and the actions of most police officers were appropriate." (Ex. D at 1.[7]) Despite that a few of the plaintiffs encountered the police more than once at protests, plaintiffs claims are based on subjective beliefs and not objective criteria.

The other cases plaintiffs cite to do not save their claims for injunctive relief. There is no "sufficient likelihood that [plaintiffs] will be wronged in a similar way." *An v. City of New York*, No. 16 Civ. 5381 (LGS), 2017 U.S. Dist. LEXIS 84364, at *15 (S.D.N.Y. June 1, 2017). Unlike *An*, there is no real and immediate possibly that a plaintiff will encounter "unconstitutional policing" at mass unplanned and unprecedented protests during a pandemic again. On opposition, plaintiffs identify a single plaintiff that they say is an activist who will continue to attend protests. (Pl. Opp.1 at 7.) But besides the single experience he described—being sprayed in the face with a chemical agent—plaintiffs have failed to plausibly allege any potential future or repeat encounters (of this type or of others). (*Payne*, Am. Compl., ¶¶119-120, 124.) Furthermore, that another plaintiff was arrested twice during the week of June 2, 2020 does not establish a potential future harm. (Pl. Opp. 2 at 9.) The days of May 28, 2020 to June 5, 2020— when the unplanned, unprecedented protests were at their apex—have passed. The protests and arrests have subsided. (Ex. D at 23.[8]) In sum, plaintiffs' claim for injunctive relief is based their speculation and subjective fears arising from an unprecedented confluence of extraordinary circumstances – a pandemic and what have some have called the largest protest movement in the United States. That is not sufficient.

---

[7] Defendants refer to the pagination of the DOI Report.

[8] Stating: "Between June 8 and June 20, New York City continued to have large protests, mostly without the confrontations between police and protesters that had happened in the previous week."

Under *Lyons*, to establish a likelihood of a future unconstitutional encounter at a protest, plaintiffs would have to show that *if* large-scale racial justice protests erupt in New York City in response to the tragic murder of a Black man by a Minneapolis police officer and *if* these protests were unplanned and *if* these protests were during a global deadly pandemic (when tensions were already high and stoked), their constitutional rights would be violated. This is a chain of conjecture. The accumulation of inferences is too speculative to supply a predicate for injunctive relief. *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). Thus, as plaintiffs cannot show a likelihood of future harm, their claims for injunctive relief must be dismissed.

2. *Plaintiffs Fail to Show the Existence of an Official Policy or Its Equivalent.*

Defendants respectfully refer the Court *infra* to Point II.A of their reply.

**B. *Plaintiffs Do Not Have Standing to Pursue Any Claim for Declaratory Relief.***

Plaintiffs' lump their declaratory relief claim with their injunctive relief claim. (Pl. Opp. 1 at 6; Pl. Opp. 2 at 8.) However, in all the cases—particularly in *Sierra*—where the complained of conduct is limited to the Mott Haven protest, there is no basis for declaratory relief.

**C. *Plaintiff State of New York Does Not Have* Parens Patriae *Standing.***

The State has sued the City. The State says[9] its lawsuit is "necessary to repair trust between our communities and the police, keep communities safe from harm, and ensure transparency and accountability within the NYPD moving forward."[10] Untangling this statement from the State, the goals articulated by the State are duplicative of the Governor's mission in issuing Executive Order 203. But plaintiffs argue in a footnote that the "recent steps by state

---

[9] Khavkine, Richard, *City Looks to Dismiss AG's Protest Lawsuit*, The Chief Leader, April 1, 2021, https://thechiefleader.com/news/news_of_the_week/city-looks-to-dismiss-ags-protest-lawsuit-updated/article_ab85234a-9331-11eb-94b4-67ba4de5a61c.html.

[10] If this truly is the State's goal, then recent legislation by City Council addresses it. *See* Ex. I.

4

lawmakers to address police misconduct underscore—rather than undermine—the State's interest in this litigation." (Pl. Opp. 1 at 9, n. 7.) Not so. The State's interest overlaps with—not underscores—lawmakers', including the Governor's, interests. While the State touts trust, safety, and transparency as its "interests," those interests cannot confer *parens patriae* standing.

Indeed, legislation is where the State's purported interests would be best addressed, not ensnared in a federal lawsuit. On opposition, plaintiffs assert the State has a quasi-sovereign interest because defendants' have not "sufficiently responded to the State's concerns." (Pl. Opp. 1 at 9.) That is false. The City has complied with the Governor's order. This compliance was subsequent to the issuance of the DOI and Corp. Counsel Reports, not before it, as plaintiffs suggest. (Pl. Opp. 1 at 9.) Plaintiffs fail to say what concerns remain; there are none. And the cases plaintiffs cite for *parens patriae* standing do not deal with Attorneys General suing when the State itself has required certain reforms—such as the reforms here. (Pl. Opp. 1 at 9, n. 7.)  If there are ongoing concerns that the State of New York has concerning policing, those concerns can and should be addressed by the legislature.

Moreover, as this case concerns six consolidated lawsuits—including three class actions[11]—the State cannot say that it is "best positioned to obtain complete relief against future violations." (Def Mem. at 11-12; Pl. Opp. 1 at 10.) Though the State claims it seeks the most comprehensive relief, the State fails to distinguish the relief it seeks and its allegations from the other plaintiffs, in particular, the *Sow* plaintiffs. *Compare* ECF No. 118 at 2 (claiming that the *Sow* plaintiffs' allegations are the "broadest"); *see also Sow*, ECF No. 36 (claiming that *Sow* plaintiffs "filed this case as related to *People* for the express purpose of ensuring that those most affected by the unconstitutional policies and practices of the City with regard to the protests at

---

[11] With one more multi-plaintiff action awaiting in the wings. *See* ECF No. 150.

issue in these cases have a seat at the table when, and if, this Court should decide to order injunctive relief and appoint a monitor.") When considering that there is presumably competent counsel—including the NYCLU and Legal Aid—at plaintiffs' counsel table, the State alone is not best positioned to obtain the relief to which plaintiffs claim they are entitled.

In sum, the State's proclaimed interest here is misplaced. The reforms ordered by the Governor address the State's concerns. The many other lawsuits consolidated with this one— also claiming broad forms of relief—can vindicate any remaining interests. The State lacks any interest that is not already being addressed through reforms or by the other plaintiffs. *See e.g. New York v. Peter & John's Pump House*, 914 F. Supp. 809, 811 n.3 (N.D.N.Y. 1996) (citing *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592 (1982) ("[I]f the state has no quasi-sovereign interest apart from the interests of private individuals, who can obtain complete relief through their own litigation, then no *parens patriae* standing exists.") Thus, the State lacks *parens patriae* standing.

### D. *Plaintiffs' Claims for Injunctive and Declaratory Relief Are Moot.*

Plaintiffs claim that their case is not moot because the reforms by defendants were voluntary. (Pl. Opp. 1 at 11.) *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 189 (2000) ("A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case."). To be sure, some of defendants' reforms were indeed voluntary, aimed at refining policing in the City following the protests this summer and following the DOI and Corp. Counsel reports. (*See* Exs. A, D, E, K.) But not all. The NYC Police Reform and Reinvention Collaborative Draft Plan was directly in response to the Governor's order. (*See* Exs. B, C, G, I, J.) Another way to say this is that those actions were not "voluntary." They were ordered by the Governor. And the City complied.

Plaintiffs also take issue with the fact that the Reform and Reinvention Collaborative was underway when defendants' motion was filed. (Pl. Opp. 2 at 11.) Now weeks have passed. That plan is no longer a draft. It has been approved by the City Council.[12] (Exs. I, J.) This case is different than *Saba v. Cuomo*, No. 20 Civ. 5859 (LJL), 2021 U.S. Dist. LEXIS 78475 (S.D.N.Y. Apr. 23, 2021), a case which has no binding effect on this Court anyway. (Pl. Opp. 2 at 11.) In *Saba*, the State's plan to "update its [Department of Motor Vehicle] computer system to facilitate a non-binary gender selection option" would be completed at a future date. Here, there is no dispute that the reforms are already being implemented. (*See* Exs. A, I, J, K.) Therefore, plaintiffs' arguments, as well as their claims for injunctive relief, are moot.

### E.   *Defendants May Rely on Documents Outside the Pleadings.*

In support of their motion, defendants relied on certain exhibits. Plaintiffs argue that the Court may not consider extrinsic evidence in evaluating plaintiffs' claims for declaratory and injunctive relief. (Pl. Opp. 1 at 12; Pl. Opp. 2 at 7). Plaintiffs are wrong.

In considering a motion pursuant to Rule 12(b) for lack of subject matter jurisdiction— such as this one—the Court can consider evidence outside of the pleadings. *Libertarian Party v. Cuomo*, 970 F.3d 106, 120-21 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order); *Cortlandt St. Recovery Corp. v. Hellas Telecomms*., 790 F.3d 411, 417 (2d Cir. 2015); *see also J.T. v. de Blasio,* No. 20 Civ. 5878 (CM), 2020 U.S. Dist. LEXIS 212663, at *124 (S.D.N.Y. Nov. 13, 2020) (citing *Kamen v. American Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986)); *Wagschal v. Skoufis*, 442 F. Supp. 3d 612 (S.D.N.Y. 2020) *aff'd* No. 20-871, 2021

---

[12]   *See*  https://legistar.council.nyc.gov/LegislationDetail.aspx?ID=4890502&GUID=2CB9D744-6371-434F-8331-4A923FF529AB&Options=ID%7cText%7c& . The adopted legislation and a tracker are annexed to the declaration of defense counsel as exhibits I and J.

U.S. App. LEXIS 11870 (2d Cir. Apr. 22, 2021). This is well established. Plaintiffs' unsupported arguments to the contrary must be rejected.[13] The Court should consider all exhibits annexed to the declaration of defense counsel.

Even if there were merit to plaintiffs' argument, plaintiffs' requested remedy—striking a declaration or a motion— is not legally supported. (Pl. Opp. 2 at 7.)  Rule 12(f) states that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "Rule 12(f) does not authorize this court to strike documents other than pleadings." *Sierra v. United States*, No. 97 Civ. 9329 (RWS), 1998 U.S. Dist. LEXIS 14135, at *28 (S.D.N.Y. Sep. 9, 1998) (citation omitted) A declaration or a memorandum of law supporting a motion is not a pleading, as defined by Rule 7(a). Plaintiffs cannot challenge defendants' declaration or motion by requesting the Court strike these documents.

Indeed, courts routinely deny motions to strike dispositive motions. *See e.g. Topps Co., Inc. v. Koko's Confectionery & Novelty*, No. 16 Civ. 5954 (GBD), 2020 U.S. Dist. LEXIS 155951, at *1,  n.1 (S.D.N.Y. Aug. 27, 2020); *Glascoe v. Solomon*, No. 18 Civ. 8284 (AT), 2020 U.S. Dist. LEXIS 46930, at *28-29 (S.D.N.Y. Mar. 17, 2020);  *Nelson v. Wells Fargo Bank, N.A*., No. 17 Civ. 4045 (LAP), 2019 U.S. Dist. LEXIS 101779, at *15-16 (S.D.N.Y. June 18, 2019);  *McLaughlin v. Chong*, No. 13 Civ. 0807 (NSR), 2016 U.S. Dist. LEXIS 42614, at *5-7 (S.D.N.Y. Mar. 29, 2016); *Huelbig v. Aurora Loan Servs., LLC*,  No. 10 Civ. 6215 (RJH) (THK), 2011 U.S. Dist. LEXIS 107428, at *5-6 (S.D.N.Y. May 18, 2011) (collecting cases).  Thus,

---

[13] Some plaintiffs do not cite to any case law for their untenable position. (*See* Pl. Opp. 2 at 7.) Other plaintiffs cite to case law that directly contradicts their untenable position. (*See* Pl. Opp. 1 at 12.) Indeed, *Kamen v. Am. Tel. & Tel. Co*., 791 F.2d 1006, 1011 (2d Cir. 1986) states that "when, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit *or otherwise*." (emphasis added.)

plaintiffs' request to strike is not supported by the Federal Rules of Civil Procedure or any legal authority and it should be summarily denied.

Furthermore, even if relying on documents outside the pleadings was improper on a Rule 12(b)(1) motion (it is not), the Court could take judicial notice of all the documents annexed to defense counsel's declaration. This is because the "Court may take judicial notice of documents that are publicly available and whose accuracy cannot reasonably be questioned. *Taylor v. City of New York*, 16 Civ. 7857 (NRB), 2018 U.S. Dist. LEXIS 52308, at *7 (S.D.N.Y. Mar. 27, 2018) (citing *Apotex Inc. v. Acorda Therapeutics, Inc*., 823 F.3d 51, 60 (2d Cir. 2016)). Here, plaintiffs do not appear to be challenging the accuracy of any of the documents relied upon by defendants: municipal, publically available plans and executive orders from the City and State. Thus, the Court can, and should consider all the documents.

## II. Plaintiffs Fail to State a Claim for Relief Pursuant to Rule 12(b)(6).

### A. *Plaintiffs Fail to State a Claim for Municipal Liability.*

1. *No Unconstitutional Policies Have Been Admitted to by Defendants.*

Plaintiffs do not address this point, so defendants rest on their moving papers.

2. *No Formal Policy Caused Plaintiffs to Be Subjected to the Denial of a Right.*

Defendants argued that plaintiffs' allegations concerning SRG were without merit. Plaintiffs address this point in footnotes. (Pl. Opp. 1 at 16, n. 9; Pl. Opp. 2 at 9, n.6.)

Most plaintiffs argue that the "use" of SRG is "wholly improper" and "contributes to NYPD's unconstitutional custom and practice" at protests. (Pl. Opp. 1 at 16, n. 9.) This undercuts their own allegation which states: "SRG routinely relied on these tactics when responding to the peaceful Protests, *which amounted to an unconstitutional policy, practice, and custom* of using excessive force against peaceful protesters and infringing upon and retaliating

against the exercise of First Amendment activity."  (*People*, Am. Compl., ¶93; emphasis added.) As plaintiffs are now instead saying that SRG's "tactics" "contribute" to the constitutional violations and do not "amount" to one, any claim premised on the unconstitutionality of SRG— or its actions—amounting to a constitutional violation should be dismissed.

The *Sow* plaintiffs go a different route. They say that SRG is "inadequately trained, poorly supervised and disciplined" and that "that policymakers showed deliberate indifference to the need to train and supervise SRG members." (Pl. Opp. 2 at 9-10, n. 6.)  But this allegation is conclusory at best. There is no allegation that SRG has a history of mishandling protests. While plaintiffs cite to one news article—in which a number of counsel of record to this action are quoted[14]—for the proposition that SRG engages in the type of misconduct complained of in these lawsuits, that is not sufficient. First, a single news article is not sufficient to demonstrate municipal liability. *Cf. Gonzalez v. New York City,* No. 16 Civ. 00254 (CM), 2016 U.S. Dist. LEXIS 177820, at *25 (S.D.N.Y. Dec. 2, 2016) ("Other courts in this Circuit have also found that a plaintiff can state a plausible claim of municipal liability by citing to cases based on similar allegations or newspaper articles reporting on such alleged conduct to support allegations of repeated misconduct."). Second, even if citing to a single article was enough to nudge plaintiff's allegations towards plausibility, this article is not the one that does that. This single article is focused on SRG's role in this summer's protests and not a history of misconduct. Therefore, the article is not on point and does not support plaintiffs' allegations.

Thus, any construable claim by plaintiffs premised on SRG should be dismissed.

---

[14] Plaintiffs' counsel file lawsuits citing to news articles in which they themselves are offering comment about the constitutionality of purported policies and practices. Echo chambers do not create truth out of opinion.  Should fashioning a *Monell* claim be as simple as relying on a single news article in which lawyers spout their opinions, all counsel would need to do to is call up a reporter and begin expounding.

3.  *No Practice So Persistent and Widespread to Establish* Monell *Liability Is Pointed to by Plaintiffs.*

 a. Plaintiffs Fail to Point to a Practice of Excessive Force at Protests.

Defendants argued that there was no ratification of any use of force at protests and that according to the allegations in the complaints, the opposite is true. (Def. Mem. at 17.) Defendants denounced force. There was (and is) no tolerance for it by defendants. This is evidenced in plaintiffs' complaints and highlighted in defendants' motion. Plaintiffs attempt to sidestep this. (Pl. Opp. 1 at 16.) They say that because defendants had direct knowledge and failed to prevent the "months-long" pattern of unconstitutional policing, they have adequately alleged ratification. (Pl. Opp. 1 at 16.) But plaintiffs' timeline is warped. During the protests this summer, defendants condemned the violence, according to plaintiffs themselves. (Def. Mem. at 17; People, Am. Compl., ¶¶101, 110, 216, 218; Payne, Am. Compl., ¶56.) Following the protests, the City conducted not one but two internal investigations. (Exs. D, E.) Since then, reforms have been underway. (Exs. A, B, C, G, I, J, K.) There is no plausible allegation that defendants failed to intervene for "months," as plaintiffs say. Neither the complaints nor the public record supports that. Thus, there is no tolerant awareness for constitutional violations at protests. There is no tolerance at all. And there certainly is not any ratification.

Plaintiffs invent a new legal doctrine which they dub "real-time notice." (Pl. Opp. 1 at 13, 15, 20.)[15] According to plaintiffs, the "sheer volume" of complaints about force at protests in a short period this summer put the City on "notice" of a problem. (Pl. Opp. 1 at 14.; Pl. Opp. 2 at

---

[15] While *Sow* plaintiffs do not use the term "real-time notice," they appear to adopt the concept. They say they have "not just one incident, but thousands in May and June of 2020 alone, which were consistent with similar injuries NYPD members have historically inflicted on other protesters." (Pl. Opp. 2 at 19.)

19). But "real-time notice" is not a legally cognizable concept.[16] Indeed, "notice" by its definition is not "real-time." It is in advance of an event. *See Niz-Chavez v. Garland*, No. 19-863, 2021 U.S. LEXIS 2232, at *27 (Apr. 29, 2021) ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that. But words are how the law constrains power."). Thus, any reference to "real-time notice" is without merit.

>   b. Plaintiffs Fail to Point to a Practice of Interfering with the Rights of the Public to Observe and Report Upon Police Behavior.

Plaintiffs address this point in a footnote. (Pl. Opp. 1 at 14-15, n. 8.) Defendants rest on their moving papers.

>   4. *No Failure to Train Municipal Employees Amounts to Deliberate Indifference.*

>   a. Plaintiffs Fail to Establish a Failure to Train Officers in Policing Protests.

Defendants argued in their moving papers that there could be no failure to train officers in policing protests because plaintiffs could not say defendants knew to a moral certainty NYPD officers would confront unprecedented and unplanned protests amidst a deadly pandemic; and because there is no history of mishandling protests during a pandemic. (Def. Mem. at 20.) Defendants further argued that plaintiffs could not possibly allege that the wrong choice by officers frequently deprives citizens of their constitutional rights. (Def Mem. at 21.)

On opposition, plaintiffs ask the Court to subtract the pandemic out of the equation. (Pl. Opp. 1 at 19.) They say that the pandemic is "besides the point." (Pl. Opp. 1 at 19.) But according to their very own pleadings, the pandemic is very much part of the "point." (*See Payne* Am. Compl., ¶¶9, 55, 97, 100, 216-17, *People* Am. Compl., ¶¶185, 189, 414; *Sow*, Am. Compl.,

---

[16] The undersigned has conducted LEXIS searches using the following search terms: "real time notice" and "monell;" "real-time notice" and "monell;" "real time notice" and "municipal liability" and "real-time notice" and "municipal liability." The searches were for all cases in all jurisdictions. There were zero results for these terms. The Court should not allow plaintiffs to create invent a new legal theory in opposition to a motion to dismiss.

¶¶2, 125-28, 438(g), 496, 502, 504, 505, 512(k); *Sierra*, Am. Compl., ¶¶80, 89, 92, 102,  112, 120, 165 (describing the individual plaintiffs' fear that a chemical agent would have on their respiratory systems); *Wood*, Am. Compl., ¶5.) Plaintiffs cannot have it both ways. There is no way defendants could anticipate that a crisis within a crisis—unplanned mass protests within a deadly pandemic—would erupt. That defendants might "confront major protests *at some time*," as plaintiff say, does not bolster their opposition. (Pl. Opp. 1 at 19.) Some arbitrary time is not equal (or even comparable) to this moment in history. The pandemic is the point. The can be no failure to train for policing unplanned and unprecedented protests during a pandemic.

Even if the deadly coronavirus pandemic, which has "ruptured" society,[17] was "besides the point," plaintiff do not plausibly allege that defendants failed to train officers in policing protests. Plaintiffs rely on their invented doctrine of "real-time notice." *See supra* at Point II.A.3.a.  But "real-time notice" would not provide the City with knowledge to a moral certainty that is officers would encounter what plaintiffs describe. (Pl. Opp. 1 at 20.)

Instead, the crux of plaintiffs' argument is that defendants should have known they would confront mass protests and should have implemented training. (Pl. Opp. 1 a 17.) To support this claim, plaintiffs insist that the Court take heed of the number of prior lawsuits, but plaintiffs attempt to minimize the outcomes of those prior lawsuits. (Pl. Opp. 1 at 18; Pl. Opp. 2 at 12.) Plaintiffs argue that the history of complaints and data in reports evidences deliberate indifference. (Pl. Opp. 1 a 17; Pl. Opp. 2 at 14.)  Or, in other words: that the City knew to a moral certainty its officers would encounter mass protests.

---

[17] *See* Def. Mem. at 4, n.7.

Even assuming this to be true,[18] plaintiffs cannot and do not plausibly allege that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (cleaned up). Plaintiffs merely cite to a self-serving paraphrasing of *Jenkins* but provide nothing more: no allegations showing how this "wrong choice" led or will lead to a frequent deprivation of constitutional rights. (Pl. Opp. 1 at 17.) Indeed, ¶82 from *Payne* and ¶33 from *People* merely attempt to identify a lack in training; and ¶¶74-82 and ¶¶94-96 from *People* do not allege that the wrong choice frequently will lead to a deprivation of rights. Plaintiffs also say that defendants had "knowledge of this repeating history." (Pl. Opp. 2 at 20) But this is not a plausible allegation that the wrong choice will lead to a frequent deprivation of constitutional rights. In fact, as emphasized in defendants' moving papers, there has not been a frequent deprivation of constitutional rights at all. One case arising out of the RNC from about a decade ago and one case arising from OWS where the jury awarded one penny is not frequent—especially in a City where rallies and protests on issues ranging from racial justice, climate change and food insecurity to electoral politics, school testing, and the siting of homeless shelters are a common occurrence.

   b. Plaintiffs Fail to Establish a Failure to Train Concerning COVID-19 Protocols; the Curfew Order; or Covering Badges.

Some of the plaintiffs refer to this argument as a "strawman." (Pl. Opp. 1 at 20, n. 11.) Other plaintiffs acknowledge that a failure to train concerning pandemic protest protocol exists as part of their claim; but they do not respond to defendants' specific argument.  (Pl. Opp. 2 at 17-18). There can be no failure to train on masks, the pandemic, social distancing, and other

---

[18] That is to say, assuming that the pandemic plays no part in this calculus and the inquiry is simply if NYPD knew it would face mass protests "at some point."

safety measures because there is no way the City—or anyone in the world—could have known to a moral certainty that there would be a pandemic. (*Sow*, Am. Compl., ¶439(g); Def. Mem. at 21.)

Instead, the crux of plaintiffs' argument concerns a purported *Monell* theory based on the enforcement of the curfew order. (Pl. Opp. 2 at 16-17.) What kind of *Monell* theory plaintiffs seek to pursue is unidentified on opposition.[19] (Pl. Opp. 2 at 16.)

At best, plaintiffs appear to be saying that liability must be imputed against the City because "NYPD personnel who were present [at protests] failed to give clearly communicated dispersal orders and/or provided meaningful opportunities to disperse before trapping or arresting protesters." (*Sow* Am. Compl., ¶96.) More explicitly, the only delineation of this claim appears to be one premised on a failure to train theory. (*Sow*, Am. Compl., ¶438(c) ("failure to provide training on the need . . . on a meaningful opportunity to comply with police directions as a prerequisite for probable cause to arrest for a Curfew Order violation").)

Plaintiffs cannot pursue a failure to train theory premised on the need for training related to probable cause to arrest for a curfew violation. As argued in defendants' moving papers, any failure to train premised on actions related to the pandemic, including curfew orders, must be dismissed. (Def Mem. at 21.) There is no way the City knew, to a moral certainty no less, that

---

[19] The paragraphs from the Amended Complaint that plaintiffs cite to on opposition in support of this apparent *Monell* theory are similarly unilluminating. (Pl. Opp. 2 at 16.) Paragraphs 72 to 99 merely set out allegations concerning the curfew order; paragraphs 121 to 124 concern a report about Mott Haven protests and a statement by Commissioner Shea; paragraph 480 and 483 concern the language of the curfew order and its basis for an arrest (not a policy); paragraphs 129 to 420 concern, according to the opposition, plaintiff's individual experiences; While paragraphs 481 to 482 suggests that enforcement of the curfew order was "consistent with NYPD policy," there is no allegation of what precisely this allegation is. Perhaps it is not giving protestors a sufficient chance to comply with dispersal orders. If that is the case, plaintiffs have already pleaded a standalone *Monell* theory based on that, which defendants have not moved to dismiss. (*Sow*, Am. Compl., ¶438(a); Def. Mem. at 16, n.23). There is no need for redundant overlapping *Monell* theories. To the extent any theory of municipal liability is based on dispersal orders, that has not been addressed at this juncture. To the extent any theory of municipal liability is premised on failure to train principles concerning the curfew order, it should be dismissed.

NYPD officers would be enforcing a curfew order during unprecedented protests in a deadly pandemic. Nor is there any history of NYPD officer mishandling enforcing curfew orders; quite simply, there cannot be as the last time there was curfew order in the City of New York was about 75 years ago.[20] And there's no history of mishandling the curfew imposed in 1945 cited to by plaintiffs. Plaintiffs do not elaborate on how citizens' rights have frequently been violated due to wrong choices concerning curfew orders. Finally, plaintiffs identify no specific deficiency concerning training related to arrests for violations curfew orders. The rarity of any curfew in the City of New York prevents this claim from proceeding. The Court should dismiss it.

     5.*No Boilerplate Claims For Municipal Liability Should Proceed.*

In a footnote, plaintiffs say there is no merit this argument. (Pl. Opp. 1 at 21, n. 13.) The *Monell* claims in *Sierra* and *Yates* are boilerplate. Plaintiffs appear to acknowledge that by asking for leave to amend. Defendants rest on their moving papers.

## B. *Plaintiffs' Claims against de Blasio, Shea, and Monahan are Redundant.*

Defendants argued that plaintiffs' claims against the Mayor, Commissioner, and Chief in their *official* capacity are duplicative of their claims against the City of New York. (Def. Mem. at 22.) On opposition, plaintiffs miss the point. (Pl. Opp.1 at 23-24; Pl. Opp. 2 at 21-22.) Plaintiffs say that they wish to hold defendants liable in their individual capacities. But that was not defendants' argument, which had focused solely on the redundancy of claims against these defendants in their official capacity. *See McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2

---

[20] *See* Jeffrey C. Mays, *Here's What Led to N.Y.C.'s First Curfew in 75 Years*, N.Y. Times, June 3, 2020, https://www.nytimes.com/2020/06/02/nyregion/curfew-new-york-city.html ("The last time New York City was under curfew was in February 1945.")

(1997). Thus, any opposition by plaintiffs must be deemed abandoned; and the claims against defendants in their official capacity must be dismissed.[21]

**C.** ***Plaintiffs Fail to Plead Any Supervisory Liability Claim.***

Defendants argued that plaintiffs failed to directly plead and prove that defendants, through their own actions, violated the Constitution. (Def. Mem. at 22-23.) Plaintiffs opposed, arguing that Second Circuit precedent does not apply to them and in any event that they pleaded the involvement of defendants. (Pls. Opp. 1 at 22-23; Pls. Opp. 2 at 21-22.)

The law in this Circuit is clear. Previously, *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) provided five separate avenues by which supervisory liability could be established, including failing to remedy a wrong. Now, the law has shifted. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("We join these circuits in holding that after *Iqbal*, there is no special rule for supervisory liability."). For a supervisor to be liable, they must "through their own individual actions have violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "The violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

Plaintiffs attempt to invent an exception to *Tangreti* that does not exist. (Pl. Opp. 1 at 22-23, Pl. Opp. 2 at 21-22.) Despite plaintiffs' insistence to the contrary, the Second Circuit in no way limited its holding in *Tangreti* to Eighth Amendment claims only.  In fact, the opposite is true. The Second Circuit opined that "the factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue because the elements of different constitutional

---

[21] There appears to be a discrepancy between Pl. Opp. 1 and Pl. Opp. 2 on this point. Pl. Opp. 1 addresses claims against the defendants in their in individual capacities. (Pl. Opp. 1 at 23.) Contrastingly, Pl. Opp. 2, though referring the Court to Pl. Opp. 1, refers to official capacities. (Pl. Opp. 2 at 22.) Because Pl. Opp. 2 refers the Court to Pl. Opp. 1, defendants refer to Pl. Opp. 1 as well, with the understanding that plaintiffs' discrepancy was in error.

violations vary." *Tangreti*, 983 F.3d at 618 (cleaned up). Limiting *Tangreti* to Eighth Amendment claims only—as the plaintiffs erroneously insists is the law—would subvert *Iqbal*.

Plaintiffs' narrow reading of *Tangreti* is not one that Courts in this Circuit follow when adjudicating claims of supervisory liability. *See e.g. Herrera v. Shea*, No. 20-CV-3665 (PKC), 2021 U.S. Dist. LEXIS 75937, at *7 (E.D.N.Y. Apr. 20, 2021); *Seabrook v. Janssen Pharm.*, No. 20 Civ. 2005 (LTS), 2021 U.S. Dist. LEXIS 74880, at *7-8 (S.D.N.Y. Apr. 19, 2021) (4th Amendment); *DuBois v. City of White Plains*, No. 16 Civ. 7771 (NSR), 2021 U.S. Dist. LEXIS 62527, at *23-27 (S.D.N.Y. Mar. 30, 2021) (same); *Falls v. Pitt*, No. 16 Civ. 8863 (KMK), 2021 U.S. Dist. LEXIS 58197, at *107-09 (S.D.N.Y. Mar. 26, 2021) (14th Amendment).

Finally, plaintiffs' attempts to characterize any allegation against defendants as an action rising to the level of a constitutional violation should be rejected. If this claim is based on the Mayor approving certain strategies, that is in the realm of *Monell*. If this claim is based on the Chief leading the Mott Haven response or approving the use of pepper spray, that again may be within gambit of *Monell* once plaintiffs prove that the Chief is a policymaker: that is an action taken by a policymaker causing a violation of plaintiffs' rights.[22] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 (1986). If the claim is based on any direct actions by the Commissioner, plaintiffs do not identify any on opposition. (Pl. Opp. 1 at 22.) Statements that defendants knew mass unrests were unfolding is not sufficient to impute supervisory liability—

---

[22] Contrary to plaintiffs' assertions, defendants do not concede that Chief Monahan is a policymaker. (Pl. Opp. 1 at 20, n. 12.) Where the contention "is not that the defendants' actions were taken pursuant to a formal policy but rather that they were taken or caused by an official whose decisions represent official policy, the court must determine whether that official had final policymaking authority in the particular area involved." *Gersbacher v. City of New York*, No. 14 Civ. 7600 (GHW), 2017 U.S. Dist. LEXIS 162707, at *41 (S.D.N.Y. Oct. 2, 2017) (dismissing claim against former Chief Esposito). No determination of the sort has yet been made in this action. This argument has not been waived. (Pl. Opp. 1 at 20, n. 12.) It simply has not been raised in this motion to dismiss. It can—and will—be raised on summary judgment, should these claims remain.

and plaintiffs cite to no authority supporting that it is. (Pl. Opp. 2 at 22.) Thus, any supervisory liability claim should be dismissed.

### III.     Qualified Immunity Shields Defendants from Liability.

Most plaintiffs concede that defendants cannot be held liable for issuing or enforcing the curfew order. (Pl. Opp. 1 at 25.) *Sow* plaintiffs appear to disagree. (Pl. Opp. 2 at 22-23.) The crux of their opposition is that defendants have not shown that plaintiffs' rights are not clearly established. (Pl. Opp. 2 at 23.) Plaintiffs also argue that the enforcement of the curfew order violated clearly established law. (Pl. Opp. 2 at 23.)

At the core of this opposition lies this inquiry: by issuing and enforcing the curfew order—in a global pandemic, where mass, unprecedented and unplanned protests devolved into looting and violence—did defendants violate a constitutional right and was the unlawfulness of defendants' conduct clearly established? The answer to this inquiry is no. (*See* Def. Mem. at 25.)

As argued in defendants' moving papers, the enforcement of the curfew order did not violate plaintiffs' constitutional rights. (Def. Mem. at 25.) But even assuming *arguendo* that defendants violated plaintiffs' constitutional rights by issuing and enforcing the curfew order, the unlawfulness of defendants' conduct is not clearly established. *See Pearson v. Callahan*, 555 U.S. 223, 224-25 (2009). The Supreme Court has repeatedly urged lower courts "not to define clearly established law at a high level of generality . . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (cleaned up). Here, plaintiffs' attempt to generalize the violation of the constitutional right at issue as simply "dispersal orders" and "uses of force in crowd control" at protests, but that is too general. Considering the specific context—issuing and enforcing a

curfew order amidst unprecedented unplanned protests that devolved into looting during a global pandemic—the violative nature of any conduct cannot be said to be clearly established.

To the contrary, the law is unsettled. There is no law from the Supreme Court or this Circuit establishing that defendants' conduct in issuing and enforcing the curfew order during the circumstances last summer was unconstitutional. Even broadly generalizing, as plaintiffs invite the Court to do, plaintiffs do not cite a robust consensus of cases. (*See* Pl. Opp. at 23.) "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In practice, this means that controlling authority or a robust consensus of cases of persuasive authority dictate the action at issue." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (cleaned up). Plaintiffs cite to one Second Circuit case; some District Court decisions; some sister Circuit decisions; and state court decisions. That is far from a robust consensus.

That defendants assert this defense at the pre-answer stage is not a reason to deny it. (Pl. Opp. 2 at 23-24.) In fact, the Second Circuit has recently done just the opposite. In *Liberian Cmty. Ass'n of Conn.*, 970 F.3d 174, the Second Circuit held District Court erred in not affording qualified immunity on a Rule 12 motion for claims against s government officials for their decisions during the Ebola epidemic. The same holds true here. As this Court has recognized, qualified immunity determinations should be made at the earliest stage possible. (*See* Rule V.F.4 of the Court's Rules and Practices (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Though these cases have been placed on a rocket docket and discovery is underway, qualified immunity should be granted for defendants for issuing and enforcing the curfew order now.

Therefore, qualified immunity must be granted for defendants Mayor de Blasio, Commissioner Shea, and Chief Monahan.

## <u>CONCLUSION</u>

For the foregoing reasons and the reasons in defendants' moving papers, defendants City of New York, Mayor Bill de Blasio, Commissioner Dermot Shea, and Chief Terence Monahan respectfully request that the Court grant their motion pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure and dismiss all of the aforementioned claims with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 14, 2021

**GEORGIA M. PESTANA**
Acting Corporation Counsel of the City of New York
*Attorneys for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By: _____
      Brachah Goykadosh
      Elissa B. Jacobs
      Dara L. Weiss
      *Senior Counsels*
      Special Federal Litigation Division