UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 10/25/2023

SAMIRA SIERRA, AMALI SIERRA, RICARDO NIGAGLIONI, ALEX GUTIERREZ, and CHARLES HENRY WOOD, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

CITY OF NEW YORK, a municipal entity; and BILL DE BLASIO, TERENCE A. MONAHAN, KENNETH LEHR, ROBERT GALLITELLI, HARRY WEDIN, JOHN D'ADAMO, GERARD DOWLING, JULIO DELGADO, KENNETH RICE, THOMAS GARGUILO, JOHN MIGLIACCIO, THOMAS MOSHER,

Defendants.

20-CV-10291 (CM)(GWG)
20-CV-10541 (CM)(GWG)

**DECISION GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FINAL CERTIFICATION OF THE SETTLEMENT CLASS, DETERMINATION THAT THE NOTICE TO THE CLASS WAS CONSISTENT WITH THE COURT'S PRELIMINARY APPROVAL ORDER, APPROVAL OF SERVICE AWARD PAYMENTS, AND APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS THROUGH MARCH 3, 2023**

Plaintiffs seek final approval of a proposed class settlement that this Court preliminarily approved on March 3, 2023. Dkt. 890 & 892. The settlement provides the highest-known per-person payments ever agreed upon in a mass arrest class action: $21,500 to each person who was seized, detained, or subject to force by NYPD officers on June 4, 2020, during a protest in the Mott Haven neighborhood of the Bronx, as well as an additional payment of $2,500 to each class member who was given a Desk Appearance Ticket. The proposed settlement also includes incentive awards of $21,500 for each of the five Class Representatives, and payment of Class Counsel's attorneys' fees and costs separate from the class awards (because this is not a common fund settlement).

The response to the Class Notice was extraordinary. Not a single opt-out or objection was received. Moskovitz Decl. ¶ 3.[1] Of the 394 people who were identified as potential class members, *id.* ¶ 4, the City subsequently identified 137 who had settled their claims prior to the proposed settlement here, *id.* ¶ 4; Mader Decl. 16, and were therefore excluded as class members, *see* Dkt. 881-1 ¶ 33 (excluding from the class those who had previously filed or settled claims relating to the protest). That left 256 potential eligible class members. There were 251 submitted claims, out of which 28 were found to be from class members who had already released claims, and one from someone who was determined not to be a class member. Moskovitz Decl. ¶ 4; Mader Decl. ¶¶ 16-17. Thus, of the 256 eligible class members, 222 ultimately submitted claims. Moskovitz Decl. ¶ 4; Mader Decl. ¶ 18.

The parties have agreed on the payment of $2.25 million for Class Counsel's fees and costs through March 3, 2023 (the date of the Preliminary Approval Order). Moskovitz Decl. ¶ 29. This amount is approximately 12% less than the amount stated in the Class Notice as the upper limit of the fees and costs Class Counsel would seek through the preliminary approval order (*see* Dkt. 881-1 at 31). Moskovitz Decl. ¶ 32. The payment of counsel fees and costs does not affect the class awards, and Class Counsel believes the agreed amount is reasonable given the degree of success in this case and 4,100+ hours that they worked on this case through March 3. *Id.* ¶¶ 31-33. The parties have agreed to negotiate Class Counsel's fees and costs incurred after March 3, 2023, at the conclusion of the case. *Id.* ¶ 29.

---

[1] As used herein, "Moskovitz Decl." refers to the Declaration of Joshua S. Moskovitz in Support on Unopposed Motion for Final Settlement Approval, dated October 17, 2023; and "Mader Decl." refers to the Declaration of Milan Mader of Rust Consulting, Inc. (the Claims Administrator), dated October 17, 2023.

Having considered the uncontested motion for approval, the Court hereby (i) grants final approval to the settlement; (ii) certifies the class for settlement purposes under Rule 23(b)(3); (iii) finds that the notice to the class was adequate and materially consistent with the Court's Preliminary Approval Order; (iv) approves the service awards to the Class Representatives; and (v) approves the parties' agreement for the payment of Class Counsel's fees and costs through March 3, 2023. The Court specifically finds that final approval is appropriate because: the settlement is fair, reasonable and adequate—and therefore, complies with Rule 23(e); that the parties complied with the Preliminary Approval Order and provided adequate notice to the class—and the response was fulsome; that the service awards are fair; and that the negotiated attorneys' fees and costs are reasonable. Finally, the Court grants approval for the parties' proposal for resolving the few remaining disputed claims.

## I.     THE COURT GRANTS FINAL APPROVAL TO THE SETTLEMENT

The settlement, which provides unprecedented per-person monetary awards, is "fair, reasonable, and adequate" as required by Federal Rule of Civil Procedure 23(e)(2). *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate."). Plaintiffs' preliminary approval motion analyzed the *Grinnell* factors as applied to this settlement; for the reasons already explained, those factors all weigh in favor of approving the class settlement. *See* Dkt. # 880 (Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval) at 7–12.

The only new information proffered in support of the final approval order is the overwhelmingly positive reaction of the Class to the proposed settlement: Without a single objection or opt-out, the Class's reaction adds further support for approving the settlement. "'It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to

be weighed in considering its adequacy.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)). "The fact that the vast majority of class members neither objected to nor opted out is a strong indication of fairness." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 343-345 (S.D.N.Y. 2008)).

As noted above, no opt outs or objections were received, *see* Moskovitz Decl. ¶ 3, and claims were received from an overwhelming percentage of eligible class members. The positive response rate received in this case is magnitudes above the average for class action cases. *See Hernandez*, 306 F.R.D. at 100 (noting that a 20% participation rate "is well above average in class action settlements") (citing *McLaughlin* on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.")); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (claims rates in class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'claims made' settlements regularly yield response rates of 10 percent or less").

Accordingly, and for the reasons reflected in Plaintiffs' preliminary approval motion (Dkt # 880), the Court grants final approval to the settlement.

## II. THE PARTIES HAVE COMPLIED WITH THE PRELIMINARY APPROVAL ORDER

The parties complied with the Preliminary Approval Order's directives for notifying the class about the proposed settlement. The parties took seriously the task of notifying as many of the members of the class as possible. The class—defined as all persons who were detained, arrested, and/or subjected to force by police officers on June 4, 2020, on East 136th Street between Brook

Avenue and Brown Place in the Bronx during the "George Floyd protest" in Mott Haven, and all persons who were given a summons or Desk Appearance Ticket following their arrest at that location—encompassed more than just people who were arrested at this particular protest. Thus, while the parties had lists of approximately 351 class members who had been arrested at the protest, there were more class members who still needed to be identified. Through dogged efforts to publicize the settlement and track down potential class members, Class Counsel identified more than 40 additional people whom Class Counsel believe are class members and who have filed claim forms.

**A. The Parties Provided Adequate Notice to Class Members**

The parties retained, and the Court approved, Rust Consulting, Inc. to serve as the Claims Administrator as proposed in the Settlement Stipulation (*see* Dkt. 890 at ¶¶ 12 & 48); Mader Decl. ¶ 1. Rust translated the Class Notice (long form) and Claim Form into Spanish and mailed copies in both English and Spanish versions to every identified class member on the initial class list. Mader Decl. ¶ 5. Each Claim Form included a unique Claim ID number. *Id.* ¶ 6.[2] The mailing was sent to 351 class members who had been arrested at the protest and were therefore identifiable in NYPD paperwork. *Id.* ¶ 5.

To identify class members who had not been arrested and thus were not on the initial list of identified class members, Rust placed advertisements of the summary Class Notice in *The Daily News* and *El Diario*, which were run in English and Spanish, respectively, three times within the

[2] The procedure of assigning unique Claim ID numbers was based on the advice of Rust Consulting, an experienced, nationwide class administration firm. Each class member needed a Claim ID number to file a claim online or by mail. The purpose was to prevent potential fraudulent claims, including unauthorized submissions of claims on behalf of actual class members. Mader Decl. ¶ 6. As described below, this procedure also created an efficient gatekeeping mechanism to assess the eligibility of self-identified class members.

same three-week period. *Id.* ¶ 9. In addition, some of the Class Representatives and Class Counsel also gave interviews to the press to ensure that word of the settlement would spread through the community, leading to coverage in *The New York Times*, the *Washington Post*, the *New York Post*, the *New York Daily News*, and *Gothamist*, among other publications, as well as local television news (ABC, CBS, NBC, and Fox). Moskovitz Decl. ¶ 5(a).

Rust also launched a website (www.motthavensettlement.com) that described the proposed Settlement. Mader Decl. ¶ 10. The website included a page to download the Stipulation of Settlement, Class Notice (in both English and Spanish), and the Consolidated Class Action Complaint. The website also answered common questions about the lawsuit and settlement and allowed Class Members to submit a claim (using their unique Claim ID number). *Id.* There was also a page on the website that described how people could identify themselves as members of the class and request a Claim ID number. *Id.* The entire website was published in both English and Spanish. *Id.*

Class Counsel conducted other efforts to notify potential class members of the proposed settlement. This included posting announcements about the settlement on social media platforms and working with organizations, like the Bronx Defenders, to post similar messages on their social media accounts. Moskovitz Decl. ¶ 5(b). Class Counsel also searched public records, social media sites, and online sources to locate and contact missing class members. *Id.* ¶ 5(c). Finally, Class Counsel hired an investigator to physically deliver notice to addresses associated with 18 class members who had not filed claims. These efforts resulted in the submission of several additional claims. *Id.* ¶ 5(d).

### B. The Parties Identified and Coordinated with Class Members

The process for handling inquiries submitted as outlined on the website worked exceedingly well. Inquiries were automatically routed to email accounts established for Class

Counsel and the New York City Law Department, and Class Counsel responded to each submission. *Id.* ¶ 7. Nearly all of the inquiries came from two groups: (i) those who were arrested and had thus already been identified as class members and who needed their Claim ID numbers or wanted more information about the settlement, and (ii) those who had not been arrested at the protest—but had been detained or subjected to police force—and so had not yet been assigned a Claim ID number. *Id.* ¶¶ 8-9. Class Counsel logged communications with more than 130 people between March and August 2023. *Id.* ¶ 7. The process resulted in dozens of class members receiving their Claim ID numbers and filing claims, including more than forty previously unknown class members who were identified and provided Claim IDs. *Id.* ¶ 11.

Class Counsel followed a defined procedure to assess the eligibility of each newly-identified class member who submitted an inquiry through Rust or contacted Class Counsel directly. *Id.* ¶ 10. For each such inquiry, Class Counsel first requested the putative class members to send any available documentary evidence that supported their claim (*e.g.*, photographs or videos taken on June 4, 2020) together with a copy of their photo ID. *Id.* Class Counsel then conducted a video conference with each putative class member to confirm their identity and their class eligibility. *Id.*

Through that process, Class Counsel identified 43 people who had not been arrested but nevertheless met the definition of the Class because they had been detained or subjected to police force.[3] *Id.* ¶ 11. They were also asked to provide descriptions of their experience on June 4, 2020, at the Mott Haven protest. In assessing each putative class member, Class Counsel carefully considered these descriptions, any documentary evidence they submitted, and, in some cases, the

---

[3] Of these 43 people, the parties dispute the eligibility of three, as discussed below in Part V. *See* Moskovitz Decl. ¶ 18.

corroborating statements of other known class members. *Id.* ¶¶ 14, 17. When a new class member was identified, Class Counsel requested that Rust assign a Claim ID number and Class Counsel then provided that number to the class member so they could submit a claim. *Id.* ¶ 13. Through this process, Class Counsel identified three claimants whose descriptions of the relevant events were inconsistent with known facts and who offered no other evidence to support their assertion that they were class members; accordingly, those three people were not given Claim ID numbers. *Id.* ¶ 14. Forty-three other claimants received Claim IDs and filed claims. *Id.* ¶ 11.

Pursuant to the terms of the Stipulation of Settlement, the City questioned the eligibility of certain putative class members identified through this process. *Id.* ¶ 16. In those cases, Class Counsel provided additional information if necessary—in some cases, going back to the claimants to request further evidence. *Id.* ¶ 17. The parties convened four lengthy phone conferences to confer about the disputed claims, and eventually reached agreement on all but three claims. *Id.* ¶ 18. As discussed in greater detail below, the Court grants the parties' request to refer these three disputed claims to Magistrate Judge Gorenstein for a determination of their status as class members. *Id.* ¶ 19.

### C.     The Court Grants The Parties' Request to Include The Eight Late-Filed Claims In The Settlement

The so-ordered Stipulation of Settlement defined the "Bar Date" as the deadline for class members to file claims. Dkt. 881-1 ¶ 5. That date was ordered to be 180 days following the Court's preliminary approval of the class settlement, *id.* ¶ 4, which was August 30, 2023. However, in the days after August 30, eight additional class members reached out to Class Counsel to file claims. Most of those people had reached out to Class Counsel earlier in the process but, for various reasons, had not been able to submit a claim form before August 30. Class Counsel processed

those submissions following their standard procedure and the Claims Administrator provided Claim IDs.

After discussion with counsel for the City concerning the reasons for the late submissions, the parties agreed to extend the Bar Date to September 30, 2023, for seven late-filed claims, and to before October 31, 2023, for one late-filed claim. *See* Moskovitz Decl. ¶ 20. Accordingly, in accordance with Paragraph 89 of the Stipulation and Settlement, the parties entered into a stipulation to extend the Bar Date. *Id.* & Ex. 1. This Court has the authority to modify the Bar Date. The Stipulation of Settlement defined the Bar Date as the date by which claims must be submitted but left it to the Court to set that specific date. Dkt. 881-1 ¶ 5 (defining "Bar Date" as "the date *established by the Court* by which any presumptive Class Member who wishes to receive payment pursuant to this Stipulation must submit a Claim Form" (emphasis added)). In addition, the Stipulation of Settlement provides for inclusion of late claims if permission is granted and good cause shown. Dkt. 881-1 ¶ 69. Accordingly, as this Court is responsible for determining the adequacy of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(ii), it is well within its discretion to extend the time period for receiving and processing claim forms by one month, to September 30, 2023, and by two months for the one agreed upon claim, to before October 31, 2023. Significantly, payment of these eight late claims will not reduce the awards to other class members who timely submitted their claims. Declining the parties' agreement on this matter would severely prejudice the eight claimants, whose claims would be forever extinguished and released.

The Court hereby grants the parties' unopposed request that the seven claims filed between August 30 and September 30, 2023, and the one claim to be filed before October 31, 2023, based on the parties' agreement, be included in this settlement.

### D. Notice to the Class Was Adequate

This process was more than adequate to provide notice that complies with due process. *See, e.g.*, *Stinson*, 256 F. Supp. 3d at 290 ("notice by mail sent to the last known address of the absent class member meets the due process requirement of notice through reasonable effort") (cleaned up). In addition to mailing the Class Notice to the last known address of every identified class member, the summary Class Notice was published for three consecutive weeks in Spanish and English language newspapers, a publicly accessible website was set up (available in English and Spanish), Class Counsel posted about the settlement on social media, and engaged an investigator to try to locate missing class members. These efforts satisfy due process.

## III. THE PROPOSED SERVICE AWARDS ARE APPROPRIATE

The proposed service awards of $21,500 for each of the five Class Representatives, in addition to the claim award they receive as class members, are appropriate. "In this Circuit, the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

The proposed service awards are reasonable. This amount was included in the Class Notice and there was ***no*** objection to them. Each of the named plaintiffs spent more than three years fighting to obtain fair compensation for the class, and their efforts led to the highest-ever, per-person awards in a mass arrest class action case. Moskovitz Decl. ¶ 22. Each Class Representative filed a Notice of Claim and sat for a 50-h examination by a lawyer representing the City. *Id.* ¶ 23. Each worked with counsel to provide responses to the City's detailed discovery requests—which included providing releases for sealed records from their arrests and, for some of the named plaintiffs, providing releases for highly-confidential medical records. *Id.* ¶ 24. Each was deposed

for several hours during the course of the litigation. *Id.* ¶ 25. Each Class Representative kept in contact with Class Counsel about the progress of the litigation and asked to be informed about important developments and evidence uncovered in discovery. *Id.* ¶ 26. Each assisted counsel in negotiating the settlement here. *Id.* ¶ 27. And several of the Class Representative helped Class Counsel to broadcast the settlement so the greatest number of class members would learn about it and participate. These efforts justify the proposed service awards. *Id.* ¶ 28.

Courts in this circuit have approved similar, and even higher, service awards for class representatives. *See e.g.*, *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (approving $50,000 service awards); *McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (noting that service awards in the amounts of $25,000 and $35,000) "fall solidly in the middle of the range" of "incentive awards given generally to named plaintiffs across a variety of class actions"); *Roberts*, 979 F. Supp. at 202-05 (awarding upward of $85,000 in service awards).

Accordingly, the Court grants approval for the payment of $21,5000 to each of the named plaintiffs, as service awards, separate and apart from the awards they will receive as class members.

## IV. THE COURT GRANTS APPROVAL FOR THE AGREED-UPON PAYMENT OF ATTORNEYS' FEES AND COSTS INCURRED THROUGH MARCH 3, 2023

This Court approves the parties' agreement that the City will pay Class Counsel $2.25 million for their reasonable fees and costs incurred through March 3, 2023 (the date of the Preliminary Approval Order).[4]

---

[4] The parties have agreed to negotiate Class Counsel's fees and costs incurred after March 3, 2023, at the conclusion of the case. Moskovitz Decl. ¶ 29. The parties will attempt to resolve the post-March 3 fees and costs, but if agreement proves impossible, then by a petition to the Court. Judges in this district have approved similar procedures. *See, e.g., McBean*, 233 F.R.D. at 392.

Because the attorneys' fees and costs in this case are *not* paid from a common fund, *i.e.*, the "money paid to the attorneys is entirely independent of money awarded to the class," as opposed to a common fund case, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean*, 233 F.R.D. at 392; *accord Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010). Moreover, "[t]he negotiation of fee agreements is generally encouraged." *In re Sony SXRD Rear Projection TV Class Action Litig*, 2008 U.S. Dist. LEXIS 36093, at *43-44 (S.D.N.Y. May 1, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

At least five factors support a finding that the agreed-upon attorneys' fees are reasonable here. "First, the fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefiting the class." *Id.* at *44. Indeed, the fee here was negotiated only after the parties negotiated the terms of the settlement stipulation, submitted it for and received preliminary approval, and notified the class of the proposed settlement. The reason for this was simple: Class Counsel did not want to delay any aspect of this settlement to address their fees and costs. "This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the class recovery." *Id.* Moreover, the agreed-upon fees are less than the $2.55 million that Class Counsel disclosed in the Notice to the Class as the upper limit of what it would seek in fees and costs through the date of the Preliminary Approval Order. Moskovitz Decl. ¶ 32.

"Second, the attorneys' fees were negotiated at arm's length." *In re Sony*, U.S. Dist. LEXIS 36093, at *44. Although that was done without a neutral mediator, counsel for the parties are experienced attorneys who have litigated fee disputes in cases like this and are well-versed in the controlling principles. Class Counsel provided the City with detailed contemporaneous time records that spanned hundreds of pages and encompassed thousands of individual time entries,

totaling well over 4,100 hours of attorney time. Moskovitz Decl. ¶ 31. The parties negotiated over several months and the amount ultimately agreed upon—representing approximately 88% of the upper limit projected by Class Counsel in the Class Notice—reflects a fair, arm's length negotiation. *Id.* ¶ 32. "Negotiations under such conditions support a finding that the requested fee is reasonable." *In re Sony*, U.S. Dist. LEXIS 36093 at *45.

"[T]hird, none of the objections to the Settlement took issue with the requested fee award." *Id.* Indeed, no objection was received to any aspect of the settlement. Moskovitz Decl. ¶ 32.

Fourth, "the reasonableness of the requested fee award can be tested by using the lodestar method of calculating reasonable attorneys' fees in common fund cases." *In re Sony*, U.S. Dist. LEXIS 36093 at *45. Class Counsel documented in contemporaneous time records 4,360.1 hours of attorney time before March 3, 2023. Moskovitz Decl. ¶ 31. Class Counsel believes those hours were reasonable and necessary to successfully litigate this case. The constitutional claims in this case were complex and difficult to prove. They included constitutional claims under 42 U.S.C. § 1983, all alleging *Monell* liability, as applied to a massive police operation. Litigating the violations of various constitutional rights resulting from that police operation—how it was planned, by whom, the intent behind it, and exactly how it was carried out—was a significant challenge. *Id.* ¶ 33. Class Counsel coordinated with their five clients and defended their depositions; drafted detailed complaints, opposed a motion to dismiss on the consolidated cases (which was defeated as to all claims in this matter); prepared for and questioned witnesses in 11 depositions; litigated dozens of discovery disputes that required Court intervention, including to establish protocols for depositions; reviewing hundreds of hours of video and audio footage from the Mott Haven protest; successfully moving to amend and consolidate the complaint; and preparing for and engaging in intensive, successful settlement negotiations with the City. *Id.* ¶ 34.

Class Counsel's hourly rates—$800 per hour for Michael L. Spiegel; $575 for Rob Rickner; $550 for Joshua S. Moskovitz and his partners; $525 for Alison Frick and Douglas Lieb; and $325 for two associates, *see id.* ¶ 35—are also reasonable for civil rights attorneys of similar skill and experience in this circuit. *See, e.g.*, *Rosario v. City of New York*, No. 18 Civ. 4023 (LGS), 2023 U.S. Dist. LEXIS 43952 (S.D.N.Y. Mar. 15, 2023) (awarding $900 per hour for a partner with 28 years' experience, $800 per hour for partners with 16 to 19 years' experience, and $500 per hour for a partner with 8 years' experience); *Abdell v. City of New York*, No. 05 Civ. 8453 (RJS), 2015 U.S. Dist. LEXIS 25510, *11, *13-14 (S.D.N.Y. March 2, 2015) (awarding $650 per hour for one of Plaintiffs' counsel, Michael Spiegel, and $550 per hour for an attorney with 12 years' experience).

Counsel also incurred $30,357.83 in costs. Moskovitz Decl. ¶ 36. Applying their reasonable hourly rates to their reasonable and necessary hours, Class Counsel's fees and costs were greater than the $2.55 million cap on fees and costs through March 3 that Class Counsel included in the Class Notice. *Id.* ¶ 37. The negotiated figure of $2.25 million is a substantial (nearly 12%) discount from that number.

Finally, while this is not a common fund settlement and the award of fees does not affect class members' recovery, it bears noting that Class Counsel's requested fees and expenses are broadly consistent with fees deemed reasonable in common fund cases. Here, the total settlement payout, including class payments,[5] Service Awards, and attorneys' fees through March 3, 2023, will be approximately $7 million. Class Counsel's request of fees and expenses in the amount

---

[5] Pursuant to Paragraph 64 of the Stipulation, awards to eligible Class Members may be reduced by any amounts owed due to New York child support liens and Department of Finance liens.

$2.25 million for work performed through March 3, 2023, is less than one-third of what the total settlement funds would be. This is well within the range of reasonableness even for common fund settlements—which, again, this is not. *See, e.g., Guippone v. BH S & B Holdings, LLC*, No. 09-CV-01029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) ("In the Second Circuit, the trend is to use the percentage-of-recovery method for class counsel fee awards in common fund cases, and one-third has been held to be a 'fair and appropriate award.'"); *Febus v. Guardian First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (awarding one-third of common fund as fee to class counsel).

Accordingly, the Court approves the parties' negotiated payment of $2.25 million for Class Counsel's fees and costs incurred through March 3, 2023.

## V. RESOLUTION OF DISPUTED CLASS MEMBERSHIP CLAIMS

Of the 251 claim forms received, there are three that remain in dispute after good faith discussions between the City and Class Counsel, because the City has determined that they lack sufficient proof of their status as class members. Moskovitz Decl. ¶¶ 16-18. Accordingly, the parties jointly submitted that the Court should refer these three claims to the Magistrate Judge for a factual decision as to their status as class members. *Id.* ¶ 19. Given the relatively small number of disputed claims, the parties believe, and the Court agrees, that adjudication of class member status by the magistrate will be the most efficient, cost-effective, and fair means of resolving these factual disputes. Accordingly, the three putative class members are referred to Magistrate Judge Gorenstein for a determination of their status as Class Members. The parties agree that they will abide by Judge Gorenstein's determination, which shall be final and binding.

## CONCLUSION

The motion for approval of the settlement, together with all requested ancillary relief, is granted.

The Clerk of Court is directed to remove the motion at Docket No. 180 from the court's list of open motions.

Dated: October 25, 2023

U.S.D.J.

BY ECF TO ALL COUNSEL